# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## SOUTHERN DIVISION

| | |
|---|---|
| KELLI TYRRELL, AS SPECIAL ADMINISTRATOR FOR THE ESTATE OF BRENT T. TYRRELL, DECEASED, | 4:17-CV-04120-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING MOTION FOR DISCOVERY AND DENYING MOTION TO STRIKE, MOTION TO DISMISS FOR LACK OF JURISDICTION, AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM |
| BNSF RAILWAY COMPANY, A DELAWARE CORPORATION, | |
| Defendant. | |

Brent Tyrrell (Brent), a South Dakota resident, died from kidney cancer in September 2011. Doc. 1 at ¶¶ 1, 9. Brent's wife Kelli Tyrrell (Kelli), as special administrator for his estate, sued Brent's long-time employer, BNSF Railway Company (BNSF), under the Federal Employers' Liability Act (FELA), which makes railroads liable to their employees for on-the-job injuries. Kelli alleges that Brent developed kidney cancer from exposure to carcinogenic chemicals while working for BNSF in South Dakota. Doc. 1 at ¶¶ 5–9. BNSF moved to dismiss the complaint, arguing that FELA's statute of limitations bars Kelli's claims and that this Court lacks personal jurisdiction over BNSF because any injury Brent may have sustained from working for BNSF occurred in Minnesota. Docs. 13, 15. Because Kelli is entitled under the circumstances to conduct discovery on the issues impacting personal jurisdiction and because the statute of limitations was tolled while she had a case pending in Montana state court, this Court denies BNSF's motions.

## I.  Facts

The long procedural history of the claims in this case began on September 8, 2011, when Brent sued BNSF under FELA in a Minnesota federal court. Doc. 17-1. Brent alleged that he had developed kidney cancer from his exposure to carcinogenic chemicals while working for BNSF and that "[m]ost, if not all," of this exposure occurred in Minnesota. Doc. 17-1 at ¶ 4. Brent died just three days later on September 11, 2011. Doc. 1 at ¶ 9. In February 2012, Brent's attorney moved for and was granted a voluntary dismissal of the Minnesota complaint. Doc. 17-2.

Kelli was appointed as the special administrator of Brent's estate in December 2012. Doc. 22-12. She filed a state court action against BNSF in Hill County, Montana that same month. Doc. 22-13. On January 15, 2014, BNSF moved to dismiss the Hill County complaint for improper venue. Doc. 22-15. BNSF argued that Kelli should have brought her case in Yellowstone County, Montana, but did not argue at that time that Montana courts lacked personal jurisdiction over it. Doc. 22-15.[1] The Hill County court dismissed Kelli's case without prejudice in April 2014. Doc. 22-13. On May 16, 2014, Kelli filed another FELA action[2] against BNSF, this time suing in Yellowstone County, Montana. Doc. 22-16. As in this case, Kelli's Yellowstone County complaint alleged that Brent's exposure to carcinogenic chemicals while working for BNSF caused him to develop fatal kidney cancer. Doc. 22-16. Although the complaint alleged that

---

[1] If BNSF had wanted to argue that the Hill County court lacked personal jurisdiction over it, Montana's Rules of Civil Procedure required BNSF to raise that defense in its motion to dismiss for improper venue. See Mont. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."); Mont. R. Civ. P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2).").
[2] FELA gives federal and state courts concurrent subject matter jurisdiction over FELA claims. 45 U.S.C. § 56.

BNSF operated railroad lines in Montana, it did not allege that Brent worked in Montana or suffered any injury there. Doc. 22-16.

BNSF moved to dismiss the Yellowstone County complaint in early July 2014, arguing that Montana courts lacked jurisdiction over it under the Supreme Court's decision that year in Daimler AG v. Bauman, 571 U.S. 117 (2014). Doc. 17-3. In Daimler, the Supreme Court rejected the argument that a corporation is subject to general personal jurisdiction in every state in which the corporation "engages in a substantial, continuous, and systematic course of business." 571 U.S. at 137–38 (citation omitted). For general jurisdiction to exist, the Court explained, the corporation's contacts with the forum state must be "so continuous and systematic" that the corporation is "essentially at home" there. Daimler, 571 U.S. at 138 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). The "paradig[m]" forums in which a corporation will be "at home," the Court wrote, are the corporation's place of incorporation and its principal place of business. Id. at 137 (alteration in original) (citation omitted). However, the Court did not "foreclose the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 139 n.19 (internal citations omitted). Characterizing Daimler as a "significant departure" from the Supreme Court's prior cases on personal jurisdiction, BNSF argued that Montana did not have personal jurisdiction over it because there were no exceptional circumstances and Montana was neither BNSF's principal place of business nor its state of incorporation. Doc. 17-3.

In early October 2014, the Yellowstone County judge issued a short order denying BNSF's motion to dismiss for lack of personal jurisdiction. Doc. 22-18. The order incorporated the reasoning in Monroy v. BNSF, a Montana state court case against BNSF that involved the same

3

jurisdictional issues. Doc. 22-18. The judge in <u>Monroy</u> concluded that Montana courts had personal jurisdiction over BNSF under § 56 of FELA, which provides in relevant part:

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States.

45 U.S.C. § 56. Because of BNSF's extensive tracks and employees in Montana, the judge in <u>Monroy</u> also concluded that BNSF was "at home" in the state under <u>Daimler</u>. Doc. 22-17. In rejecting BNSF's argument that <u>Daimler</u> narrowed personal jurisdiction in FELA cases, the judge reasoned:

> A long line of Montana cases has consistently denied efforts by BNSF to challenge jurisdiction or venue. But BNSF also asks this Court to ignore or overrule or distinguish over 100 years of state and federal FELA case law and specifically 45 U.S.C. § 56. <u>Goodyear</u> and <u>Daimler</u> ruled on general long-arm jurisdiction law. To have those two United States Supreme Court cases, that did not involve FELA, limit or control FELA jurisdiction based on the facts of those cases involving overseas foreign subsidiaries is a stretch that this Court is unwilling to make.

Doc. 22-17 at 20.

The Yellowstone County court entered final judgment on the issue of personal jurisdiction and BNSF appealed to the Supreme Court of Montana. Doc. 22-20. In late May 2016, the Supreme Court of Montana held that Montana courts have general personal jurisdiction over BNSF under FELA and Montana law. <u>Tyrrell v. BNSF Ry. Co.</u>, 373 P.3d 1, 9 (Mont. 2016). Starting with FELA, the court determined that 45 U.S.C. § 56 allowed Montana state courts to exercise general personal jurisdiction over railroads "doing business" in the State. <u>Id.</u> at 4, 7. As to Montana law, the court explained that general personal jurisdiction exists over "[a]ll persons found within" the State. <u>Id.</u> at 8 (alteration in original) (quoting Mont. R. Civ. P. 4(b)(1)). Given BNSF's numerous

4

employees and miles of track in Montana, the court ruled that the railroad was both "doing business" in Montana and "found within" the State. Id. at 7–8. Although BNSF argued that Montana courts lacked jurisdiction over it under Daimler, the court distinguished Daimler on the ground that it did not involve FELA or a railroad defendant. Tyrrell, 737 P.3d at 6, 8–9.

The Supreme Court of the United States reversed on May 30, 2017, holding that § 56 did not address personal jurisdiction and that Montana's exercise of personal jurisdiction over BNSF under state law was unconstitutional. BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1555–59 (2017). Addressing FELA first, the Supreme Court concluded that the authorization in § 56 to hear cases in a district where the defendant was doing business concerned venue, not personal jurisdiction, and that FELA's concurrent jurisdiction provision only addressed subject matter jurisdiction. Id. at 1555–57. Disagreeing with the Supreme Court of Montana, the Court determined that its earlier FELA decisions did not address personal jurisdiction under § 56. Id. at 1557–58. As to the state law question, the Court ruled that Daimler applies to FELA cases and that BNSF's activities in Montana were insufficient to render it "at home" in the State under Daimler and Goodyear. Tyrrell, 137 S. Ct. at 1558–59. The Court remanded the Tyrrell case to the Supreme Court of Montana for "further proceedings" consistent with the Court's decision. Id. at 1560.

Kelli then filed a motion with the Supreme Court of Montana seeking discovery on whether BNSF had consented to personal jurisdiction in Montana. Doc. 22-23. On August 8, 2017, the Supreme Court of Montana denied Kelli's motion and remanded her case to the trial court with instructions to dismiss the case without prejudice. Doc. 22-23. Kelli filed this case on August 30, 2017. Thereafter, a state court judge dismissed Kelli's Montana case on September 28, 2017. Doc. 22-24.

BNSF has filed a motion to dismiss under Rule 12(b)(2), arguing that this Court lacks personal jurisdiction over BNSF because any injury Brent sustained occurred in Minnesota. Doc. 13. BNSF also moved to dismiss under Rule 12(b)(6), asserting that the statute of limitations barred Kelli's claim. Doc. 15. In contesting BNSF's motions, Kelli's attorney filed an affidavit along with twenty-six exhibits. Doc. 22. Although Kelli argued that her complaint and the evidence submitted justifies denying BNSF's motions, she moved in the alternative for leave to conduct discovery on the issue of personal jurisdiction. Doc. 29. BNSF then moved to strike the affidavit from Kelli's attorney and six of the attached exhibits.[3] Doc. 23. This Court addresses the motion to strike before turning to BNSF's Rule 12(b) motions and Kelli's motion for jurisdictional discovery.

## II.  Analysis

### A.  Motion to Strike

BNSF moved to strike the affidavit from Kelli's attorney and the following six exhibits: a transcript from an October 2010 interview Brent did with an investigator for his attorney in the Minnesota case, Doc. 22-2; an August 2011 letter from a BNSF claims representative to the Minnesota attorney stating that BNSF was unaware of any injury claim from Brent, Doc. 22-3; a late August 2011 email from the Minnesota attorney telling Brent to fill out an injury report and to take a summary of his interview to his oncologist, Dr. Michael Keppen, Doc. 22-4; medical records from a September 2011 appointment Brent had with Dr. Keppen, Doc. 22-5; a September 7, 2011 email the Minnesota attorney sent to a BNSF claims office employee, Doc. 22-6; and emails from early 2012 in which the Minnesota attorney and BNSF's attorney discuss gathering

---

[3]BNSF also requested oral argument on its motions. Because the parties' positions are clear from the briefs and because oral argument would not aid in the decisional process but instead add more cost and delay to the case, this Court denies BNSF's request.

Brent's medical records, Doc. 22-9. In the October 2010 interview, Brent described being exposed to certain chemicals while working for BNSF in South Dakota, Minnesota, and Iowa. Doc. 22-2 at 3–10. After seeing Brent in early September 2011, Dr. Keppen wrote in the medical record that he "thought [Brent's] occupational exposures on the railroad were significant contributing factors to his renal cancer based on review of current epidemiologic literature and his impressive exposures to these carcinogens, specifically his risk for renal cancer." Doc. 22-5 at 5. In the September 7, 2011 email to a BNSF claims office employee, the Minnesota attorney explained that Brent did not have much longer to live and that the attorney "would like to get a statement done quickly before [Brent] dies." Doc. 22-6 at 1. The Minnesota attorney suggested that the parties cooperate to get the statement from Brent or, alternatively, that the attorney file suit and get an emergency order allowing Brent's video deposition. Doc. 22-6 at 1.

BNSF argues that the six exhibits contain hearsay and have not been properly authenticated. Doc. 23. Rather than arguing that these exhibits are admissible evidence, Kelli explains that she filed the exhibits "to provide the Court a basis for entering a Scheduling Order and not prolonging this case by entertaining additional defense motions pertaining to jurisdictional issues." Doc. 28 at 1–2. In Kelli's view, this Court can deny BNSF's motions to dismiss without considering the six exhibits. Doc. 28. Because this Court chooses not to rely on the six exhibits or those portions of the affidavit that were based on those exhibits, BNSF's motion to strike is denied as moot. See Stewart v. Prof'l Comput. Ctrs., Inc., 148 F.3d 937, 940 n.3 (8th Cir. 1998) (dismissing motion to strike as moot where challenged documents and sections of brief were not relied on in considering merits of appeal).

**B.**     **Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction**

The showing a plaintiff must make when the defendant contests personal jurisdiction under Rule 12(b)(2) depends on the stage of the case and the method the court employs to resolve the jurisdictional dispute. See K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). At trial or after an evidentiary hearing, the plaintiff must prove personal jurisdiction by a preponderance of the evidence. Creative Calling Sols., Inc. v. LF Beauty Ltd., 799 F.3d 975, 979 (8th Cir. 2015); Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003). But when the court limits its review of a Rule 12(b)(2) motion solely to affidavits and other written evidence, the plaintiff "need only make a prima facie showing of [personal] jurisdiction." Dakota Indus., 946 F.2d at 1387. "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." K-V Pharm. Co., 648 F.3d at 592 (internal marks and citations omitted). When ruling on this Rule 12(b)(2) motion made without an evidentiary hearing, this Court must view the evidence the parties submitted in the light most favorable to Kelli and must resolve all factual disputes in her favor. Id.

The parties disagree on the test governing whether this Court has personal jurisdiction over BNSF. BNSF contends that Kelli must meet the "minimum contacts" test developed under the Fourteenth Amendment's Due Process Clause while Kelli counters that the minimum contacts test does not apply because she is suing under FELA. Courts look to Rule 4(k) of the Federal Rules of Civil Procedure to determine which jurisdictional test to apply on a motion to dismiss. Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008). As relevant here, Rule 4(k)(1) provides that serving a summons or providing a waiver of service establishes personal jurisdiction over a defendant "(A) who is subject to the jurisdiction of a court

of general jurisdiction in the state where the district court is located;" or "(C) when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1). When Rule 4(k)(1)(A) is the basis for personal jurisdiction, courts apply the long-arm statute of the forum state to determine whether jurisdiction exists. uBID, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 425 (7th Cir. 2010); Wallace v. Mathias, 864 F. Supp. 2d 826, 832–34 (D. Neb. 2012). Because a state court's personal jurisdiction is subject to the Fourteenth Amendment's Due Process Clause, this inquiry also requires courts to apply the minimum contacts test. uBID, Inc., 623 F.3d at 425; Wallace, 864 F. Supp. 2d at 834. Thus, personal jurisdiction under Rule 4(k)(1)(A) exits only if both the forum state's long-arm statute and the minimum contacts test are satisfied. Wallace, 864 F. Supp. 2d at 833. The test is different when a federal statute authorizes service of process and jurisdiction is thus based on Rule 4(k)(1)(C). In such instances, compliance with the state's long-arm statute is unnecessary and the relevant constitutional inquiry is not whether the defendant has minimum contacts with the forum state but rather whether the defendant has "sufficient contacts" with the United States as a whole. Wallace, 864 F. Supp. 2d at 833.

Kelli argues that the minimum contacts test does not apply here because 45 U.S.C. § 56 gives this Court personal jurisdiction over BNSF. According to Kelli, the sentence in § 56 describing where a suit "may be brought" confers personal jurisdiction in any district "in which the cause of action arose." Doc. 20 at 2, 6, 11. Kelli made a similar argument before the Supreme Court of the United States in Tyrrell, where she claimed that the sentence in § 56 describing where suit may be brought gives courts personal jurisdiction in districts where a railroad is "doing business." The Supreme Court rejected Kelli's argument, concluding that this sentence in § 56 "concerns federal-court venue and confers no personal jurisdiction on any court." Tyrrell, 137 S. Ct. at 1556; id. at 1553 ("We hold that § 56 does not address personal jurisdiction over railroads.

Its first relevant sentence is a venue prescription governing proper locations for FELA suits filed in federal court."). As the Supreme Court explained, Congress "generally uses the expression, where suit 'may be brought,' to indicate the federal districts in which venue is proper." Id. at 1555. "In contrast," the Court wrote, "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." Id.

Because § 56 neither confers personal jurisdiction in federal courts nor authorizes service of process, Tyrrell, 137 S. Ct. at 1553, 1556; Frass v. S. Pac. Transp. Co., 810 F. Supp. 189, 191 (S.D. Miss. 1993), this Court can exercise personal jurisdiction over BNSF only to the extent permitted by South Dakota's long-arm statute and the Due Process Clause of the Fourteenth Amendment, Fed. R. Civ. P. 4(k)(1)(A); Wallace, 864 F. Supp. 2d at 833–34. South Dakota's long-arm statute confers jurisdiction to the full extent permissible under the Due Process Clause of the Fourteenth Amendment, so the question here is whether asserting personal jurisdiction over BNSF comports with due process. Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (applying South Dakota law).

Personal jurisdiction under the Due Process Clause may be either general or specific. Goodyear, 564 U.S. at 924–25. Courts with general jurisdiction over a defendant may hear "any and all claims" against the defendant, even if those claims are unrelated to the defendant's contacts with the forum state. Daimler, 571 U.S. at 127 (2014) (quoting Goodyear, 564 U.S. at 919). For general jurisdiction to exist, the defendant's contacts with the forum state must be "so 'continuous and systematic'" that the defendant is "essentially at home" there. Goodyear, 564 U.S. at 919 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). Here, the only information about BNSF's contact with South Dakota is that BNSF owns and operates railroad tracks within the State and has employees who work there. Doc. 1 at ¶ 2. These contacts fall short of the sort

of continuous and systematic presence necessary for general jurisdiction. See Tyrrell, 137 S. Ct. at 1559 (holding that Montana did not have general jurisdiction over BNSF even though BNSF has over 2,000 miles of railroad track and more than 2,000 employees in the State). Specific jurisdiction, by contrast, may be based on a defendant's solitary or irregular contact with the forum state. Daimler, 571 U.S. at 127. Unlike general jurisdiction, however, specific jurisdiction is limited to suits arising out of or relating to the defendant's contact with the forum state. Goodyear, 564 U.S. at 919.

Courts may exercise specific jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts" with the state such that having to defend a lawsuit there "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (quotation omitted). These minimum contacts must be based on "some act by which the defendant purposefully avails" himself of the forum state "such that he should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–75 (1985) (quotations omitted). It is the defendant, rather than the plaintiff or a third party, who must have the minimum contacts in the forum state. Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014). Moreover, the defendant's contacts must be "with the forum State itself, not . . . with persons who reside there." Id.; see also id. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting Burger King, 471 U.S. at 475)).

Under Eighth Circuit precedent, five factors guide evaluating whether the constitutional requirements for personal jurisdiction have been met: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of

action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522–23 (8th Cir. 1996) (footnote omitted). The first three factors are the most important while the last two are merely secondary. Id. at 523.

Specific jurisdiction is appropriate when a defendant purposefully directs its activities at the forum state "and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). In Tyrrell, for instance, the Supreme Court explained that BNSF, which operated track and had employees in Montana, would be subject to specific jurisdiction in the State "on claims related to the business [BNSF] does in Montana." 137 S. Ct. at 1559. There is no dispute that BNSF purposefully directed its activities at South Dakota such that it has sufficient minimum contacts with the State to support specific jurisdiction; BNSF owns and operates railroad tracks in South Dakota and has employees there. Doc. 1 at ¶ 2, 5. The question here is whether Brent's injuries arise out of or relate to BNSF's conduct in South Dakota.

BNSF's argument that Brent's injuries are unrelated to its conduct in South Dakota rests on the following paragraph from the complaint Brent's attorney filed back in 2011 in Minnesota federal court:

> The plaintiff was employed by the Defendant in the track department for many years, working on and around Defendant's tracks in the State of Minnesota, and other places. Most, if not all, of the negligent acts and exposures upon which Plaintiffs' [sic] claims are based, as hereinafter set forth, took place in the State of Minnesota.

Doc. 17-1 at 1. BNSF contends that this paragraph is a binding judicial admission on Kelli such that she cannot now claim that Brent's injuries occurred in South Dakota. "A judicial admission is a formal admission before a court that acts as a substitute for evidence in that it does away with

the need for evidence in regard to the subject matter of the judicial admission." Warner Bros. Entm't v. X One X Prods., 840 F.3d 971, 978 (8th Cir. 2016) (citation and internal quotation marks omitted). Statements in pleadings can constitute judicial admissions, but not if those pleadings have been abandoned or amended. Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990). In First Bank of Marietta v. Hogge, 161 F.3d 506 (8th Cir. 1998), for instance, the Eighth Circuit held that although a state court petition that had been voluntarily dismissed was "admissible evidence that can be weighed like any other admission against interest," the petition did not constitute a binding judicial admission. Id. at 510; see also Hartmann Hay Co. v. Wilbur-Ellis Co., 8:16CV123, 2016 WL 9408572, at *4 (D. Neb. Sept. 19, 2016) (considering state-court complaint that had been voluntarily dismissed as evidence but declining to treat complaint as binding judicial admission); Lewis & Clark Outdoors, Inc. v. L.C. Indus., Inc., No. 5:07-cv-5164, 2009 WL 10673015, at *7 (W.D. Ark. July 22, 2009) (stating that voluntarily dismissed claims were not binding judicial admissions but would be admissible as "evidentiary admissions"). Because the district court in Minnesota granted a motion to voluntarily dismiss Brent's complaint, the statements in the complaint do not constitute judicial admissions. Hogge, 161 F.3d at 510. Kelli is thus free to explain why the Minnesota complaint stated that most of Brent's injuries occurred in Minnesota and to offer evidence that his injuries actually occurred in South Dakota.[4]

---

[4]Kelli does not contend that the Minnesota complaint is inadmissible but rather acknowledges that a dismissed complaint "may be introduced into evidence if relevant to an issue in the case," Doc. 20 at 9, and argues that she has submitted sufficient evidence that Brent's injuries occurred in South Dakota. Whether the Minnesota complaint ultimately will be admissible is an interesting question. The most obvious basis for admitting a prior pleading is Federal Rule of Evidence 801(d)(2), which provides that a statement is not hearsay if it is offered against an opposing party and the statement "(A) was made by the party in an individual or representative capacity;" or "(C) was made by a person whom the party authorized to make a statement on the subject." Courts are split on whether a statement by a decedent is admissible under Rule 801(d)(2) in a case brought by the decedent's estate. Compare Huff v. White Motor Corp., 609 F.2d 286, 290–91 (7th Cir. 1979) (holding that decedent's statement was not admissible under Rule 801(d)(2) in action

Kelli contends that she has offered enough evidence that Brent's injuries occurred in South

Dakota to survive a motion to dismiss. Alternatively, she seeks to conduct discovery on the issue

of personal jurisdiction, contending that BNSF's records—which Kelli expects will show the

---

brought by his estate because Rule 801(d)(2) does not cover "privity-based" admissions), Ponzini v. Monroe Cty., 3:11-CV-00413, 2016 WL 4494173, at *3 (M.D. Pa. Aug. 24, 2016) (noting split on issue and concluding that statements by a decedent were not admissible under Rule 801(d)(2)), In re Cornfield, 365 F. Supp. 2d 271, 277 (E.D.N.Y. 2004) (explaining that because Rule 801(d)(2)(A) abolished "privity based admissions," statements by a decedent were not admissible against the decedent's widow), and 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:63 (4th ed.) ("The admissions doctrine of Rule 801(d)(2) makes no provision for statements by persons in 'privity' of estate, interest, or obligation with a party, and no other provision reaches such statements. Although some modern cases have been slow to accept the obvious implication, clearly such statements are now excludable if offered for their truth unless some other hearsay exception or 'not hearsay' category applies.") (footnote omitted), with Phillips v. Grady Cty. Bd. of Cty. Comm'rs, 92 F. App'x 692, 696 (10th Cir. 2004) (holding that testimony about the decedent's statements was admissible under Rule 801(d)(2)(A) in a case brought by the decedent's estate), Estate of Shafer v. Comm'r, 749 F.2d 1216, 1220 (6th Cir. 1984) (concluding that a decedent, "through his estate, is a party to [an] action," so that the decedent's statements "are a classic example of an admission") (citation and internal quotation marks omitted), Wolff v. Padja, Inc., No. 1:14–CV–01466–CL, 2016 WL 258635, at *1 (D. Or. Jan. 20, 2016) ("[B]ecause this action is brought on Mrs. Wolff's behalf by her estate, the Court finds this statement to be admissible as an admission by a party opponent."), N.W. v. City of Long Beach, EDCV 141569-VAP (SPx), 2016 WL 9021966, at *5 (C.D. Cal. June 7, 2016) ("First, Decedent's statements are party admissions under Rule 801(d)(2) of the Federal Rules of Evidence."), and Schroeder v. de Bertolo, 942 F. Supp. 72, 78 (D.P.R. 1996) ("In the case at bar, Rosita was deceased at the time of the trial. Nevertheless, she was a party to this action through her estate. If plaintiffs had succeeded in obtaining a verdict against defendants, Rosita's estate would have received a monetary award. Therefore, the fact that Rosita was dead does not diminish the interpretation that her estate, in representation of Rosita, was a party to the present cause of action. Therefore, Rosita's statements were admissible against Rosita's estate as a party admission pursuant to Fed.R.Evid. 801(d)(2)(A)."); see also, Savarese v. Agriss, 883 F.2d 1194, 1201 (3d Cir. 1989) (affirming district court's decision to admit under 801(d)(2)(A) statements by the deceased commissioner of transportation authority in a case against the commissioner, the authority, and some of its board of directors). Here, we have the additional issue that the statement in the Minnesota complaint was written by Brent's attorney rather than Brent himself. Other possible avenues for admitting the Minnesota complaint include the statement-against-interest exception in Rule 804(b)(3) and the residual hearsay exception in Rule 807. See Huff, 609 F.2d at 291 (considering whether decedent's statement was admissible under residual hearsay exception). Because Kelli does not argue that the Minnesota complaint is inadmissible—and the parties have not briefed that issue—this Court will consider the complaint for purposes of the motion to dismiss but makes no ruling on whether the complaint might be admissible in later stages of this case.

identity of Brent's coworkers and when and where he worked—contain evidence that Brent's injuries occurred while working for BNSF within South Dakota. Allowing jurisdictional discovery is the appropriate course here. Although Kelli has not offered much concrete evidence to show that Brent's injuries occurred in South Dakota, her allegation to that effect is not mere speculation. Kelli has shown that Brent performed work for BNSF in South Dakota, BNSF admits that Brent worked for BNSF in South Dakota and elsewhere, and Brent died of kidney cancer after contending that exposure to chemicals while working for BNSF caused the cancer. Doc. 1 at ¶ 5; Doc. 31 at 1–2. Thus, some basis exists for the allegation that Brent was exposed to carcinogenic chemicals in South Dakota. Under these circumstances, Kelli's request for jurisdictional discovery is not a fishing expedition, but rather will allow her to flesh out the connection between BNSF's contacts with South Dakota and Brent's exposure to allegedly carcinogenic chemicals while employed by BNSF. See Steinbuch v. Cutler, 518 F.3d 580, 589 (8th Cir. 2008) (holding that although the plaintiff had not proven a prima facie case of personal jurisdiction, the district court should have allowed jurisdictional discovery because the plaintiff had offered documentary evidence, not merely speculation or conclusory allegations, about the defendant's contacts with the forum state); Viracon, Inc. v. J & L Curtain Wall LLC, 929 F. Supp. 2d 878, 886 (D. Minn. 2013) ("To be sure, a plaintiff may be entitled to specifically targeted jurisdictional discovery, designed to flesh out connections with the forum state already shown to exist.") (citation, internal marks, and alterations omitted). BNSF argues that jurisdictional discovery[5] is unnecessary because Kelli will be unable

---

[5]BNSF seems to contemplate very limited jurisdictional discovery, if any is allowed, by asserting that discovery of its employment records of Brent will show where he worked, but not where he was exposed to any chemicals. Doc. 25 at 2; Doc. 31 at 2. This Court contemplates initial discovery to be broader, however. Regardless of whether this case proceeds in South Dakota federal court or is transferred to Minnesota federal court eventually, Kelli should be entitled to conduct discovery not only on where Brent worked, but also with whom, what projects and assignments, and what chemical exposure, if any, occurred on each such site. Otherwise, this

to rebut the statement in the Minnesota complaint, but this conclusory argument neglects that the statement in the complaint is not a judicial admission and that Kelli can offer evidence that contradicts it. The statement in the Minnesota complaint does not justify denying Kelli's request for discovery when the complaint was voluntarily dismissed, there are questions about the admissibility and weight that should be afforded the voluntarily dismissed complaint, and there is evidence that Brent worked for BNSF in South Dakota. BNSF's motion to dismiss for lack of personal jurisdiction is denied without prejudice to renewing the motion once discovery on matters concerning personal jurisdiction has occurred.

## C.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v.

---

Court may never know whether it or the District of Minnesota or both have personal jurisdiction over BNSF in this case.

Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

When determining whether to grant a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal marks omitted) (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Here, Kelli outlined the procedural history of her Montana action in the complaint and alleged that the statute of limitations was tolled while the Montana action was pending. Doc. 1 at ¶¶ 11–12. In ruling on BNSF's 12(b)(6) motion, this Court has considered the orders, opinions, and filings from Kelli's two Montana actions. These documents are matters of public record, their authenticity is unquestioned, and they are integral to Kelli's complaint. BNSF does not object to consideration of these documents for purposes of its Rule 12(b)(6) motion. Indeed, BNSF, in support of its Rule 12(b)(6) motion in this case, filed a copy of its July 2014 motion to dismiss Kelli's Montana action. Doc. 17-3.

BNSF argues that Kelli's complaint must be dismissed as untimely[6] under FELA's statute of limitations, which provides that "[n]o action shall be maintained under this chapter unless

---

[6]"As a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011) (quoting Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008)). Kelli's complaint filed in 2017 in this Court involves injury to her husband, who died in 2011, and alleged tolling of the statute of limitations, Doc. 1 at ¶¶ 11–12, so the nature of the complaint sufficiently establishes a possible statute of limitations defense.

commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. BNSF asserts that FELA's three-year statute of limitations at the latest began running on September 9, 2011, because that was when Brent first claimed that BNSF caused his injuries. Doc. 16 at 2. Kelli counters that her May 2014 action in Montana tolled the statute of limitations under the Supreme Court's decision in Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 427 (1965). Courts ordinarily presume that federal limitations periods are subject to equitable tolling unless tolling would be inconsistent with the statute. Young v. United States, 535 U.S. 43, 49 (2002). The Supreme Court has held that FELA's statute of limitations "is not totally inflexible," and may be extended "under appropriate circumstances." Burnett, 380 U.S. at 427. Although courts employ equitable tolling "sparingly," the Supreme Court has allowed tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (citing, among other cases, Burnett, 380 U.S. 424).

The parties' disagreement over whether equitable tolling applies turns in large part on their differing applications of the Burnett decision. The issue in Burnett was whether a suit that was timely but filed in an improper venue tolled FELA's statute of limitations. The plaintiff in Burnett filed a FELA suit against the railroad in Ohio state court. 380 U.S. at 424. Although the Ohio court had jurisdiction and the railroad was properly served, the state case was dismissed for improper venue. Id. at 425. The plaintiff refiled in federal court eight days later, but the district court dismissed the case as barred by FELA's statute of limitations. Id. at 425. The Supreme Court held that "when a plaintiff begins a timely FELA action in a state court of competent jurisdiction, service of process is made upon the opposing party, and the state court action is later dismissed because of improper venue, the FELA limitation is tolled during the pendency of the

state action." Id. at 428. In so holding, the Court began by explaining that barring the plaintiff's claim would not serve the purpose of the statute of limitations. Id. at 428–30. "Statutes of limitations[,]" the Court explained, "are primarily designed to assure fairness to defendants" by protecting them from stale claims and barring plaintiffs who sleep on their rights. Id. at 428. The plaintiff's timely state court action fulfilled these purposes, the Court determined, because it not only demonstrated the plaintiff's diligence, but also put the railroad on notice he was pursuing his FELA remedies. Id. at 429–30. Given those circumstances, the Court reasoned that the railroad could not have relied on "the policy of repose embodied" in FELA's limitations period. Id. Next, the Court determined that failing to apply equitable tolling to cases that are timely but filed in the wrong venue would undermine Congress's aim to have a uniform statute of limitations for all FELA actions. Id. at 432–35. When a plaintiff files a timely suit in a federal court but venue is improper, 28 U.S.C. § 1406(a) allows the court to transfer the case to a proper forum even though the statute of limitations would bar the plaintiff's claim if it were filed anew. Burnett, 380 U.S. at 430. Similarly, state jurisdictions either have a statute akin to § 1406(a) (which allows the case to be transferred to a proper forum within the state), or a "'savings' statute" (which gives a plaintiff whose timely action has been dismissed for procedural reasons like improper venue additional time to bring a second action). Burnett, 380 U.S. at 431–32. Because the time for refiling under a savings statute varies from state to state, the Court declined to apply savings statutes to FELA actions. Id. at 432–33. "On the other hand," the Court explained, refusing to apply equitable tolling in the case before it would produce even greater nonuniformity. Id. at 433–34. If, for instance, a plaintiff brings a timely but improperly venued FELA suit in either federal court or a state with a transfer statute, his claim would survive a later running of the statute of limitations. Id. at 433–34. In contrast, the Court observed, the statute of limitations would bar such a claim if

the plaintiff had brought it in a state that merely had a savings statute. Id. at 434. Allowing such a "procedural anomaly," the Court reasoned, would be inconsistent with the statute of limitations and FELA as whole. Id. at 433. "Moreover," the Court explained, while Congress had "sought to protect the plaintiff's right to bring an FELA action in a state court," refusing to apply equitable tolling would discourage plaintiffs from filing FELA actions in certain states. Id. at 434. Lastly, the Court determined that "the humanitarian purpose of the FELA" shows that "Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so." Id.

The parties disagree over how to interpret Burnett. Kelli argues that the statute of limitations was tolled under Burnett while the case she filed on May 16, 2014, in Yellowstone County, Montana was pending. BNSF reads Burnett much more narrowly, contending that it only applies to cases dismissed for improper venue, and not for lack of personal jurisdiction. BNSF argues that while the key to Burnett was the need for national uniformity, this concern does not extend to cases filed in courts lacking personal jurisdiction. In BNSF's view, valid personal jurisdiction is a prerequisite to equitable tolling.

Although the Eighth Circuit has declined to decide whether equitable tolling is allowed when an earlier dismissal was for a lack of jurisdiction, Weathers v. Bean Dredging Corp., 26 F.3d 70, 73 (8th Cir. 1994), other circuits have held that such tolling may be available under appropriate circumstances. In Valenzuela v. Kraft, Inc., 801 F.2d 1170 (9th Cir. 1986), for example, the Ninth Circuit applied equitable tolling when the plaintiff timely filed her Title VII claims in a state court that lacked subject matter jurisdiction. Id. at 1174–75. In the Ninth Circuit's view, equitable tolling was appropriate because the jurisdictional question was unclear when the plaintiff filed her initial complaint in state court, the state court filing showed the "due diligence which statutes of

limitations are designed to engender," and the filing put the defendant on notice that it should retain the evidence necessary for its defense. Id. at 1175. Citing to Burnett, the Ninth Circuit explained that "[t]he purpose of the statute, the notice to defendant, and the diligence demonstrated by the plaintiff determine the availability of tolling, not the presence or absence of subject matter jurisdiction." Valenzuela, 801 F.2d at 1175. The Sixth Circuit reached a similar conclusion in Fox v. Eaton Corp., 615 F.2d 716 (6th Cir. 1980), holding that a plaintiff's timely filing of a Title VII claim in state court equitably tolled the statute of limitations even though the state claim was dismissed for a lack of subject matter jurisdiction. Id. at 719–20. The Sixth Circuit explained that although filing an action in a court that "clearly lack[ed]" jurisdiction would not toll the statute of limitations, the plaintiff had a "reasonable basis" for initially bringing suit in state court. Id. at 719–20. In addition, the Sixth Circuit observed, equitable tolling was consistent with the rationale in Burnett because the plaintiff had been diligent and the defendant was neither confronted by a stale claim nor deprived of the opportunity to preserve evidence. Id. at 720. Still another example is Platoro Ltd., Inc. v. The Unidentified Remains of a Vessel, 614 F.2d 1051 (5th Cir. 1980), in which the Fifth Circuit relied on the reasoning in Burnett to toll the statute of limitations in a case that had originally been filed in a court that lacked in rem jurisdiction. Id. at 1054. Noting that the plaintiff's original choice for jurisdiction had still been reasonable, the Fifth Circuit concluded that failing to apply equitable tolling would be inconsistent with the intent of the statute of limitations. Id.

In addition to these appellate decisions, several district courts (and at least one state court) have held that an earlier suit that has been dismissed for a lack of personal jurisdiction can toll a statute of limitations. Abeyta v. BNSF Ry. Co., No. 2:17-CV-0350-TOR, 2018 WL 327283, at *3–4 (E.D. Wash. Jan. 8, 2018) (holding that equitable tolling under Burnett can apply to suits that

were dismissed for lack of personal jurisdiction); Figueroa v. BNSF Ry. Co., 275 F. Supp. 3d 1225, 1228 (E.D. Wash. 2017) (same); Flores v. Predco Servs. Corp, No. 10-1320 RMB/AMD, 2011 WL 883640, at *4–6 (D.N.J. Mar. 11, 2011) (rejecting narrow reading of Burnett and holding that earlier claim filed in a court that lacked personal jurisdiction tolled statute of limitations); Neal v. Buffaloe & Assocs., No. 3-12-0331, 2012 WL 1883419, at *2–3 (M.D. Tenn. May 22, 2012) (relying on Burnett to hold that equitable tolling applied to earlier case dismissed for lack of personal jurisdiction); Walck v. Discavage, 741 F. Supp. 88, 91–92 (E.D. Pa. 1990) (holding that equitable tolling applied to suit filed in a court that lacked personal jurisdiction); Reynolds v. Logan Charter Serv., Inc., 565 F. Supp. 84, 86 (N.D. Miss. 1983) (rejecting argument that Burnett only applied to cases dismissed for improper venue and holding that equitable tolling applied to claim filed in court that lacked personal jurisdiction); O'Dea v. BNSF R.R. Co., No. CI 17-2342 (District Court of Lancaster Cny., Neb. Feb. 14, 2018) (applying Burnett to hold that equitable tolling can apply to suits that were dismissed for lack of personal jurisdiction), available at Doc. 33-1. Two of these decisions—Abeyta and O'Dea—involved FELA cases that were filed in state court but then dismissed for lack of personal jurisdiction after the Supreme Court's decision in Tyrrell. The courts in Abeyta and O'Dea reasoned that applying equitable tolling would advance FELA's goal of a uniform limitations period. This is so because while a suit filed in a federal court lacking personal jurisdiction can be transferred rather than dismissed, the same option might not be available for a suit filed in state court. Abeyta, 2018 WL 327283, at *3; O'Dea, at 5–6.

This Court concludes that under the appropriate circumstances, equitable tolling can and should apply to an earlier case that was dismissed for lack of personal jurisdiction. Although prior decisions provide guidance in determining whether equitable tolling is appropriate, the doctrine must remain flexible enough that courts can "meet new situations [that] demand equitable

intervention." Holland v. Florida, 560 U.S. 631, 650 (2010) (alteration in original) (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 248 (1944)). To this end, courts apply equitable tolling on a case-by-case basis and avoid per-se rules. Id. at 650. Contrary to BNSF's argument, the Burnett decision does not support a rule that personal jurisdiction is always necessary before equitable tolling can apply to a prior action. Nor does this Court agree with BNSF that Burnett turned so heavily on establishing uniformity in FELA actions that it must be limited to its facts. Although uniformity was part of the rationale for the holding in Burnett, the Supreme Court also considered the "policy of repose" underlying FELA's statute of limitations, the plaintiff's diligence, the notice the railroad had received, and Congress's desire to protect plaintiffs' rights to bring FELA actions in state court. Burnett, 380 U.S. at 426–35. Furthermore, cases filed in the wrong venue are not necessarily the only situations where applying equitable tolling will produce uniformity in FELA's statute of limitations. See Abeyta, 2018 WL 327283, at *3; O'Dea, at 5–6. The decisions in Valenzuela, Fox, Platoro, and the district court cases cited above show that courts faced with circumstances that are similar, but not identical, to Burnett have considered Burnett when deciding whether to apply equitable tolling. This approach fits with the rule that "courts of equity can and do draw upon decisions made in other similar cases for guidance." Holland, 560 U.S. at 650.

BNSF argues, however, that the decision in Schor v. Hope, No. 91-0443, 1992 WL 22189 (E.D. Pa. Feb. 4, 1992), shows that personal jurisdiction is a necessary condition for equitable tolling. The district court in Schor held that a prior securities action that was dismissed for a lack of personal jurisdiction did not toll the statute of limitations. Id. at *2–3. In reaching this conclusion, the district court distinguished Burnett:

> The situation in the instant case is quite different [from the situation in Burnett]. Schor's filing in New Jersey was not adequate to lead to

a final judgment without issuance of new initial process. Dismissal
for lack of personal jurisdiction is not the same as dismissal for
improper venue. Schor argues that considerations of justice can
outweigh the policies behind a firm statute of limitations, and that
this is especially true where plaintiff "brings his action within the
statutory period in a court which due to a procedural technicality
lacks power to hear the claim." Pl. Sur-reply Brief at 4. The court is
not convinced that lack of personal jurisdiction over a party is
merely a "procedural technicality." The concept of personal
jurisdiction is a fundamental part of due process which Rohner Ryan
has not waived.

Id. at *2. But the district court in Schor went on to hold that the Supreme Court had "clearly" held

that equitable tolling did not apply to the securities claims the plaintiff was bringing. Thus, the

Schor court's discussion of Burnett is arguably dicta because it was not essential to the court's

decision. See Municipality of San Juan v. Rullan, 318 F.3d 26, 28 n.3 (1st Cir. 2003) (explaining

that dicta "comprises observations in a judicial opinion or order that are not essential to the

determination of the legal questions then before the court") (citation and internal marks omitted).

Moreover, Schor does not persuade this Court that equitable tolling can never apply when the prior

case is dismissed for a lack of personal jurisdiction. After all, Schor did not involve a statute of

limitations like FELA's that allows equitable tolling, did not discuss whether the plaintiff had a

reasonable basis for filing in the wrong court, and did not consider the inherent flexibility of the

equitable tolling doctrine. See Flores, 2011 WL 883640, at *5 (concluding that Schor was

distinguishable and unpersuasive because it involved a statute that was not subject to equitable

tolling).

BNSF also cites to four appellate decisions holding that a timely state court action does not

toll the statute of limitations for claims over which federal courts have exclusive jurisdiction. Doc.

16 at 10 (citing Hairston v. Travelers Cas. & Sur. Co., 232 F.3d 1348, 1352–53 (11th Cir. 2000);

Shofer v. Hack Co., 970 F.2d 1316, 1319 (4th Cir. 1992); Bailey v. Carnival Cruise Lines, Inc.,

774 F.2d 1577, 1579–81 (11th Cir. 1985); United States ex rel. Harvey Gulf Int'l Marine, Inc. v. Md. Cas. Co., 573 F.2d 245, 247 (5th Cir. 1978)). According to BNSF, these appellate court decisions "make clear" that Burnett applies solely to cases that were dismissed for improper venue. This argument is unpersuasive for two reasons. First, three of the cases BNSF cites were decided by the end of 1992, before the Eighth Circuit in its 1994 Weathers decision stated that no federal appellate court had "squarely decided" whether equitable tolling could "apply where a prior dismissal of the same claims was based on lack of jurisdiction, as opposed to lack of venue." Weathers, 26 F.3d at 72 & n.3. The plaintiff in Weathers specifically argued that Burnett applied to his earlier state suit that was dismissed for lack of personal jurisdiction. Weathers, 26 F.3d at 71. That the Eighth Circuit in Weathers did not even mention Shofer, Bailey, or Harvey suggests that these decisions did not, in fact, "make clear" that Burnett only applies to cases that were dismissed for improper venue. Second, the circumstances in the appellate cases BNSF cites do not support a rigid rule that equitable tolling can never apply to a prior action that was dismissed for a lack of jurisdiction. All of these cases involved claims that were filed in state court even though there were statutes giving federal courts exclusive jurisdiction over the claims. Hairston, 232 F.3d at 1350–52; Shofer, 970 F.2d at 1319; Bailey, 774 F.2d at 1578; Harvey, 573 F.2d at 247. Unlike Valenzuela, Fox, and Platoro, the appellate cases BNSF cites did not mention there being any doubt about whether the decision to file in state court was wrong. In fact, the Fourth Circuit in Shofer explained that the state court "clearly lacked jurisdiction" over the plaintiff's claims. 970 F.2d at 1319. Similarly, the Eleventh Circuit in Bailey stated that exclusive federal jurisdiction over the plaintiff's claims was "well established" and that the plaintiff's attorney should have known this. 774 F.2d at 1579. Given "equity's resistance to rigid rules," this Court declines to read the appellate cases BNSF cites as prohibiting equitable tolling whenever the prior case is

dismissed for a lack of jurisdiction. Holland, 560 U.S. at 651. In particular, these cases do not bar equitable tolling when the plaintiff had a reasonable basis for filing his case in the wrong jurisdiction. See also Flores, 2011 WL 883640, at *4 & n.7 (distinguishing Harvey and Hairston from cases where the plaintiff mistakenly believed that a court had personal jurisdiction over the defendant).

BNSF's other argument against equitable tolling focuses on the Supreme Court's use of the phrase "competent jurisdiction" in Burnett. See Burnett, 380 U.S. at 428 (holding that "when a plaintiff begins a timely FELA action in a state court of competent jurisdiction, service of process is made upon the opposing party, and the state court action is later dismissed because of improper venue, the FELA limitation is tolled during the pendency of the state action"). According to BNSF, "competent jurisdiction" means both personal and subject matter jurisdiction, and the Supreme Court's use of the phrase shows that personal jurisdiction is a prerequisite to equitable tolling. But there is some doubt over whether the phrase "competent jurisdiction" refers to personal jurisdiction. See Lightfoot v. Cedant Mortg. Corp., 137 S. Ct. 553, 560–62 (2017). Reading the phrase as establishing a rigid rule that personal jurisdiction is a condition precedent to equitable tolling is inconsistent with Burnett as a whole, with the flexible nature of equitable tolling, and the decisions in Valenzuela, Fox, Platoro, and the district court cases cited above.

Because equitable tolling may apply to prior actions that were dismissed for a lack of personal jurisdiction, this Court must decide whether tolling is warranted in Kelli's case. The Supreme Court has established a two-part test for applying equitable tolling in the habeas context. Holland, 560 U.S. at 649. To be entitled to equitable tolling, the petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418

(2005)). Although the Supreme Court recently applied the Holland test in a case under the Contract Disputes Act, the Court acknowledged that it had never held that the test "necessarily applies outside the habeas context." Menominee Indian Tribe of Wis. v. United States, 136 S. Ct. 750, 756 n.2 (2016). The circumstances in Menominee, the Court explained, did not require it to decide whether "an even stricter test" or a "more generous test" might apply in non-habeas cases. Id. Because the Eighth Circuit has applied the Holland test outside the habeas context, this Court will apply the test here. See Sisseton-Wahpeton Oyate of the Lake Traverse Reservation v. U.S. Corps of Eng'rs, 888 F.3d 906, 917–18 (8th Cir. 2018).

As stated above, the first hurdle of the equitable tolling test requires Kelli to show that she has diligently pursued her rights. Menominee Indian Tribe of Wis., 136 S. Ct. at 755. Kelli filed a timely FELA action against BNSF in Montana state court on May 16, 2014. Kelli's suit not only showed the diligence that statutes of limitations are designed to encourage, but also put BNSF on notice that it should preserve the evidence required for its defense. See Burnett, 380 U.S. at 428–30. Kelli exercised similar diligence once the Supreme Court issued the Tyrrell decision; she sought jurisdictional discovery in the Supreme Court of Montana and filed this case less than a month after her discovery request was denied.

BNSF argues, however, that the Montana complaint does not show diligence because Kelli lacked a reasonable basis for believing that BNSF was subject to personal jurisdiction in Montana. See Reichert v. Mon River Towing, No. 2:09-cv-1493, 2010 WL 419435, at *3 (W.D. Pa. Jan. 29, 2010) (refusing to apply equitable tolling where the plaintiff's filing in a court that lacked jurisdiction was unreasonable). Citing to three cases, BNSF argues that Kelli should have known that § 56 did not allow Montana courts to exercise personal jurisdiction over it. See Fraley v. Chesapeake & Ohio Ry. Co., 397 F.2d 1, 4 (3d Cir. 1968) (holding that § 56 concerns venue rather

than jurisdiction); Imm v. Union R.R. Co., 289 F.2d 858, 859 (3d Cir. 1961) (stating that § 56 is a venue provision); S. Pac. Transp. Co. v. Fox, 609 So. 2d 357, 362–63 (Miss. 1992) (concluding that § 56 does not address personal jurisdiction in state courts). But the question of personal jurisdiction in FELA cases was not always as clear as BNSF contends. When Kelli filed her complaint in May 2014,[7] there were decisions from the Supreme Court of Montana and Judge Learned Hand suggesting that Montana state courts could exercise personal jurisdiction over BNSF under § 56. See Kilpatrick v. Tex. & Pac. Ry. Co., 166 F.2d 788, 790 (2d Cir. 1948) (Hand, J.) (footnotes omitted) ("In Baltimore & Ohio R. Co. v. Kepner and Miles v. Illinois Central R. Co. the Supreme Court held that, once a railroad 'did business' in any jurisdiction, [§ 56] subjected it to personal service regardless of how much inconvenience or expense was involved in trying the action far away from the scene of the accident and the residence of all the defendant's witnesses."); Labella v. Burlington N., Inc., 595 P.2d 1184, 1185–86 (Mont. 1979) (citing § 56 and stating that Montana courts "clearly ha[d] jurisdiction" over a FELA claim for injuries occurring in Washington). Tellingly, although Fraley, Imm, and Fox were issued long before Kelli filed her December 2012 complaint in Montana, BNSF did not move to dismiss the initial Montana complaint for a lack of personal jurisdiction. Indeed, BNSF did not argue that Montana courts lacked jurisdiction over it until after the Supreme Court's decision in Daimler in 2014, which BNSF characterized as a "significant departure" from the Supreme Court's prior decisions on personal jurisdiction. Doc. 17-3 at 10. Although BNSF now asserts that Kelli should have filed a concurrent action in the proper court after Daimler, Kelli had a reasonable basis for continuing to believe that Montana state courts had personal jurisdiction over BNSF. After all, both the trial

---

[7]Kelli also had filed a prior Montana complaint against BNSF in 2012, which was dismissed in 2014.

court in Montana and the Supreme Court of Montana held that there was personal jurisdiction over

BNSF despite the <u>Daimler</u> decision.[8]  Similar to the plaintiff in <u>Burnett</u>, Kelli failed to sue BNSF

in the proper court "not because [s]he was disinterested, but solely because [s]he felt that [her

Montana] action was sufficient." 380 U.S. at 429.  The fact that the trial court and the Supreme

Court of Montana both held that there was personal jurisdiction over BNSF makes this case

decidedly different from situations where the plaintiff did not have a reasonable basis for filing

suit in the wrong jurisdiction.  See <u>Abeyta</u>, 2018 WL 327283, at *4 (holding that the plaintiff's

decision to sue BNSF in Montana was not unreasonable given that "the district court in Montana

and the Supreme Court of Montana adopted the position that there was jurisdiction over BNSF for

similarly situated plaintiffs"); <u>Flores</u>, 2011 WL 883640, at *5 (concluding that the plaintiff had a

reasonable expectation that personal jurisdiction was possible in Texas where the Texas trial court

held that jurisdiction existed).  In sum, Kelli's conduct shows that she has diligently pursued her

rights against BNSF.

    The second prong of the <u>Holland</u> test requires Kelli to show that some extraordinary

circumstance stood in her way and prevented timely filing.  <u>Menominee</u>, 136 S. Ct. at 755.  This

prong is satisfied "only where the circumstances that caused a litigant's delay are both

extraordinary *and* beyond its control."  <u>Id.</u> at 756.  Applying the second prong of <u>Holland</u> to cases

where a complaint was timely but filed in the wrong forum can be an awkward fit.  Some courts

have suggested that filing a timely complaint in the wrong forum may constitute an extraordinary

circumstance.  See <u>Knight v. Cal. Dep't of Corrs.</u>, 629 F. App'x 817, 818 (9th Cir. 2015) ("An

---

[8]Before the Supreme Court of Montana's decision in <u>Tyrrell</u>, 373 P.3d 1, one Montana state judge
relied on Daimler to hold that it did not have jurisdiction over <u>BNSF</u>.  See <u>Tyrrell</u>, 373 P.3d at 3.
According to BNSF's filings with the Supreme Court of Montana, however, the majority of
Montana state court judges to consider the issue held that Montana courts had personal jurisdiction
over BNSF. Doc. 22-21 at 4.

extraordinary circumstance may exist if a petitioner mistakenly files their petition in the wrong forum within the limitations period."); DeLeon v. Gen. Insulation, Inc., 575 F. App'x 292, 293 (5th Cir. 2014) (per curiam) ("Equitable tolling applies to plaintiff's deadline for filing an EEOC charge only in extraordinary circumstances, such as where the parties have a pending case in the wrong forum . . . ."); United States v. Collins, 364 F. App'x 496, 498 (10th Cir. 2010) (stating that "[e]xtraordinary circumstances might exist when a litigant has filed a defective pleading within the limitations period"). However, other cases—some of which were decided before the Supreme Court articulated the Holland test—have applied equitable tolling to a timely complaint filed in the wrong forum without considering the extraordinary circumstances issue. See Valenzuela, 801 F.2d at 1175; Fox, 615 F.2d at 719–20; Platoro, 614 F.2d at 1053; Abeyta, 2018 WL 327283, at *3–4; Neal, 2012 WL 1883419, at *2–3. Kelli's May 2014 filing and maintenance of the Montana FELA complaint found by the trial court and Supreme Court of Montana to be properly filed in a forum with jurisdiction over BNSF qualifies as an extraordinary circumstance that prevented her from filing a timely complaint in a proper forum. When Kelli filed her May 2014 complaint, she had a reasonable basis for believing that it was sufficient; not only did precedent from the Supreme Court of Montana suggest that Montana courts had personal jurisdiction over BNSF, but BNSF had failed to raise a personal jurisdiction defense when it moved to dismiss Kelli's earlier complaint for improper venue. BNSF's initial conduct thus suggested that it might not contest personal jurisdiction in Montana. See Mont. R. Civ. P. 12(h)(1) (stating that certain defenses, including lack of personal jurisdiction, are waived if they are not included in a preliminary motion under Rule 12 as required by Rule 12(g)). On July 2, 2014, only after the Daimler decision, BNSF moved to dismiss Kelli's May 2014 complaint. Assuming BNSF is correct that the statute of limitations began running at the latest on September 9, 2011, Kelli perhaps had until at latest

September 8, 2014, to file a timely complaint in a proper forum. In early August 2014, however, the judge in Monroy distinguished Daimler and held that Montana courts could exercise personal jurisdiction over BNSF in a FELA case involving an out-of-state plaintiff and out-of-state injuries. Doc. 22-17. Kelli thus continued to have a reasonable basis for believing that she did not need to refile her complaint in a different forum. The rulings of the trial judge and the Supreme Court of Montana upholding personal jurisdiction over BNSF, though occurring after BNSF alleges the statute of limitations ran, support the reasonableness of Kelli's belief that her complaint was properly filed. Contrary to BNSF's argument, Kelli's failure to refile her complaint in another forum within the statute of limitations was not the sort of negligence for which equitable tolling is inappropriate. See Irwin, 498 U.S. at 96 (explaining that equitable tolling does not apply to "a garden variety claim of excusable neglect"). Indeed, Kelly was no more careless than the plaintiff in Burnett, who sued in Ohio despite a statute establishing that venue was not proper anywhere in that State.[9] Burnett, 380 U.S. at 429 n.6.

Tolling the statute of limitations here is also consistent with the rationale in Burnett. As in Burnett, barring Kelli's claim would not serve the purpose of FELA's statute of limitation; Kelli did not sleep on her rights, BNSF had notice of Kelli's claim within the limitations period, and BNSF could not have relied on "the policy of repose" under the circumstances. Burnett, 380 U.S. at 429–30. Also, like in Burnett, refusing to apply equitable tolling here would discourage

---

[9]BNSF also argues that equitable tolling cannot apply when a plaintiff forum shops, but BNSF cited no authority in support of this argument. As the Ninth Circuit has explained, "[a] competent attorney, as part of his ethical obligation to represent his client with reasonable diligence, see Model Rule of Professional Conduct 1.3, is obligated to consider various fora and to choose the best forum in which to file a client's complaint." Vivendi SA v. T-Mobile USA Inc., 586 F.3d 689, 695 n.10 (9th Cir. 2009). Whatever Kelli's reasons for suing BNSF in Montana were, she had a reasonable basis at the time for believing that BNSF was subject to personal jurisdiction there.

plaintiffs from filing FELA actions in state courts. Id. at 434. That is, if the plaintiff was concerned about the statute of limitations and the question of personal jurisdiction was close or unclear, the plaintiff would file in federal court rather than state court so that his case potentially could be transferred to the appropriate forum instead of dismissed. Beyond that, failing to apply equitable tolling here would undermine Congress's goal of uniformity in FELA actions. See id. at 432–35; see also Abeyta, 2018 WL 327283, at *3 (holding that failing to apply equitable tolling to a FELA action that was filed in state court but then dismissed after Tyrrell would undermine uniformity); O'Dea, at 5–6 (same). If Kelli had sued BNSF in Montana federal court, that court could have transferred her case to a federal district court with personal jurisdiction over BNSF without the statute of limitations expiring.[10] 28 U.S.C. §§ 1404(a), 1406(a); Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962). But this option did not exist in Montana state court. This is the sort of "procedural anomaly" that animated the Supreme Court's decision to apply equitable tolling in Burnett. Burnett, 380 U.S. at 432–35.

Although this Court is mindful that equitable tolling should be employed sparingly, this is a unique case. Kelli diligently pursued her claims, multiple state judges and the Supreme Court of Montana agreed with Kelli that Montana courts had personal jurisdiction over BNSF in FELA cases, and applying equitable tolling is consistent with FELA's statute of limitations as well as

_____

[10]Courts may transfer cases for lack of personal jurisdiction under either §§ 1404 or 1406, depending on whether venue is proper in the transferring court. An important factor under both statutes is whether a transfer is in "the interest of justice." 28 U.S.C. §§ 1404(a), 1406(a). Transfer would have been appropriate for Kelli's Montana case because she did not sue BNSF there in bad faith but rather had a reasonable basis for believing that Montana courts had personal jurisdiction over BNSF. See 14D Charles Alan Wright et al., Federal Practice and Procedure § 3827 (4th ed.) (explaining that courts "are likely to order transfer" when "the plaintiff's belief that venue was proper was in good faith and reasonable").

FELA as a whole. Kelli's May 2014 Montana action tolled the statute of limitations such that this case was timely filed.[11]

## III.    Conclusion

For the reasons explained above, it is hereby

ORDERED that BNSF's Motion to Dismiss for Lack of Jurisdiction, Doc. 13, is denied without prejudice to BNSF renewing the motion once discovery on matters concerning personal jurisdiction has occurred. It is further

ORDERED that BNSF's Motion to Dismiss for Failure to State a Claim, Doc. 15, is denied. It is further

ORDERED that BNSF's Motion to Strike Affidavit and Exhibits, Doc. 23, is denied as moot. It is finally

ORDERED that Kelli's Motion for Discovery on Issue of Personal Jurisdiction, Doc. 29, is granted.

DATED this 12ᵗʰ day of June, 2018.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

---

[11]In Burnett, the Supreme Court held that the plaintiff's cause of action was tolled "until the state court order dismissing the state action becomes final by the running of the time during which an appeal may be taken or the entry of a final judgment on appeal." 380 U.S. at 435. Kelli argues that the statute of limitations was tolled until thirty days after the state court's September 28, 2017 dismissal of her case. See Mont. R. App. P. 4(5)(a)(i) (stating that a party must file a notice of appeal within thirty days of the entry of judgment). This Court need not determine the exact date when the statute of limitations started running again. Kelli's August 30, 2017 complaint in this Court was timely even if the statute of limitations started running on May 30, 2017, when the Supreme Court issued Tyrrell.